**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

HAROLD ELROD,

      Petitioner,

-vs-                                   Case No.  8:11-CV-1777-T-27MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

    Petitioner, an inmate of the Florida penal system proceeding through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") challenging convictions for two counts of aggravated assault on a law enforcement officer with a deadly weapon and one count of resisting officers with violence entered in 2006 by the Tenth Judicial Circuit Court, Polk County, Florida (Dkt. 1).  Respondent filed a response to the petition (Dkt. 8), and  Petitioner filed a reply (Dkt. 10).

    Petitioner alleges three claims of ineffective assistance of trial counsel: 1) counsel was ineffective in failing to object to prosecutorial misconduct during closing argument; 2) counsel was ineffective in failing to impeach three deputies with prior inconsistent statements; and 3) counsel was ineffective in failing to have Petitioner re-evaluated for competency to stand trial after Petitioner attempted suicide immediately prior to trial.

## PROCEDURAL HISTORY

On December 13, 2004, Petitioner was charged by Information with two counts of aggravated assault on a law enforcement officer with a deadly weapon and one count of resisting officers with violence (Respondent's. Ex. 1C at record pp. 42-44).  Petitioner's first trial on November 8, 2005, ended in a mistrial because a State's witness violated the trial court's ruling that witnesses were not to testify that at the time deputies confronted Petitioner, he yelled that he was not going "back" to jail (Respondent's. Ex. 1A at Initial Brief p. 5).  Petitioner's second trial on December 14, 2005, also ended in a mistrial because the jury was unable to reach a unanimous verdict (Id.; Respondent's Ex. 1C at record pp. 266-68).  At the conclusion of the third trial on November 8, 2006, the jury found Petitioner guilty as charged in the Information (Id. at record pp. 276-78).  Petitioner was sentenced to concurrent terms of 10-years incarceration with a three-year minimum mandatory sentence on the aggravated assault charges and a concurrent term of 5-years incarceration on the resisting officers charge (Resp. Ex. 1C at record pp. 309-13).  The state appellate court affirmed Petitioner's convictions and sentences (Resp. Ex. 1D); *Elrod v. State*, 983 So. 2d 587 (Fla. 2d DCA 2008) [table].

On December 11, 2008, Petitioner, through counsel, filed a Motion for Post Conviction Relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 raising one ground for relief, to wit, trial counsel was ineffective in failing to object to the prosecutor, during closing argument, referencing Petitioner's comment to law enforcement that he would not be "taken back to jail." (Resp. Ex. 2A).  After the State responded (see Resp. Ex. 2C), the state post conviction court denied the 3.850 motion (Resp. Ex. 2D).  The state appellate court affirmed (Resp. Ex. 2F); *Elrod v. State*, 18 So. 3d 1045 (Fla. 2d DCA 2009) [table].

On May 20, 2010, Petitioner, through new counsel, filed a second 3.850 motion raising three grounds of ineffective assistance of trial counsel: 1) counsel was ineffective in failing to object to multiple instances of improper prosecutorial conduct during closing arguments; 2) counsel was ineffective in failing to impeach three deputies with their prior inconsistent statements during the two previous trials; and 3) counsel was ineffective in failing to have Petitioner re-evaluated for competency after Petitioner attempted suicide immediately prior to trial (Resp. Ex. 3A).  After the State responded (see Resp. Ex. 3C), the state post conviction court denied the 3.850 motion (Resp. Ex. 3D).  The state appellate court per curiam affirmed without written opinion on June 10, 2011 (Resp. Ex. 3F); *Elrod v. State*, 64 So. 3d 682 (Fla. 2d DCA 2011) [table].

On August 9, 2011, Petitioner, through counsel, filed the instant federal habeas petition in this court (Dkt. 1).

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence.  Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).  It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).  "Under § 2254(d), a habeas court must determine what arguments or theories supported. . .the state court's decision; and then

3

it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Wetzel v. Lambert*, 132 S.Ct. 1195, 1198 (2012) (citing *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)).

**Ineffective Assistance of Counsel**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d

732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek*

5

*v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

**DISCUSSION**

**Ground One**

Petitioner contends that trial counsel was ineffective in failing to object to prosecutorial misconduct during closing argument. Specifically, Petitioner first argues that trial counsel was ineffective in failing to object to the prosecutor charging at the jury box while holding a baseball bat and shouting "I'm gonna kill you, motherfuckers. You're gonna have to kill me because I'm not going back to jail." (See Resp. Ex. 1C - November 8, 2006 trial transcript at p. 73). Petitioner asserts that the prosecutor's comment that Petitioner yelled that he was "not going *back* to jail" violated a pre-trial order allowing the State to use the Petitioner's statement, but without the word "back." (See Resp. Ex. 1C - November 8, 2005 trial transcript at pp. 4-8). Petitioner next argues that trial counsel was ineffective in failing to object to the prosecutor violating the "Golden Rule" when he improperly stated (shortly after he had charged at the jury with a bat) that "I scared each and every one of you just now. Imagine how scared the officers were when it was for real, without the safety of this wooden bar between us." (See Resp. Ex. 1C - November 8, 2006 trial transcript at p. 73).

Respondent argues that the "Golden Rule" claim is procedurally barred because it was not raised either on direct appeal or during the initial Rule 3.850 post conviction proceedings (Dkt. 8 at pp. 16-18). Respondent further argues that the claims do not warrant relief on the merits (Id. at pp. 9-23).

**A. Prosecutor's "not going back to jail" comment**

Prior to the start of Petitioner's first trial, the State filed a motion in limine requesting, among other things, that the trial court allow the deputies to introduce Petitioner's statement to the deputies that "you fuckers are going to have to kill me; I ain't going back to jail!" (Resp. Ex. 1C at record

7

p. 121).  The trial judge denied the motion in limine solely to the extent that it prohibited the State's

witnesses, during the State's case-in-chief, from testifying that Petitioner had shouted that he was

not going "back" to jail (Id. at record pp. 57-61).  Stated differently, the trial court ruled that with

the exception of the word "back," Petitioner's entire statement was admissible (Id.).

In his initial Rule 3.850 motion, Petitioner asserted a single claim: that he was deprived the

effective assistance of counsel when trial counsel failed to object to the prosecutor's statement during

closing argument that Petitioner had shouted to police " You're gonna have to kill me because I'm

not going back to jail." (Resp. Ex. 2A).  In denying the claim, the state post conviction court stated:

> In his Motion Defendant raised a single claim for relief: His trial counsel was ineffective for failing to object when the State, in closing argument, referenced the Defendant's comment to law enforcement during the incident that he would not be "taken back to jail," in violation of the trial court's ruling on a pre-trial motion in limine that excluded said comment.
>
> In its Order to Show Cause the Court instructed the State to respond to the claim.
>
> In its Response the State argues that Defendant's claim should be summarily denied. Specifically, even accepting that it was error not to object to the State's comments during closing argument, the State argues the claim fails to meet the 'prejudice prong' of *Strickland* because it fails to meet the burden of showing that the error was so serious that there is a "reasonable probability that [but for the error] the outcome of the proceeding would have been different." Response at 5, *citing* Strickland v. Washington, 466 U.S. 668 (1984), and Spencer v. State, 842 So. 2d 52 (Fla. 2003).
>
> After review of the State's arguments, citations and attachments to its Response, the Court accepts and agrees with the State's position, as more fully set forth in its Response and supported by the attachments thereto, which the Court incorporates herein.
>
> Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's *Motion for Post Conviction Relief* is **DENIED**.

(Respondent's Ex. 2D).

In the State's response, incorporated by the post conviction court in the order denying the Rule 3.850 motion, the State argued that Petitioner was not prejudiced by defense counsel's failure to object to the prosecutor's statement that Petitioner had shouted that he was not "going *back* to jail." Specifically, the State argued that there was no prejudice because the word "back" was used only once during the trial (during the prosecutor's closing statement), whereas the jury heard on several other occasions, from the prosecutor and the witnesses, that Petitioner had shouted that he "was not going to jail." (Respondent's Ex. 2C). The State therefore argued that the prosecutor's statement that Petitioner had said that he was "not going back to jail" did not become a feature of the trial (Id.). The State further argued that had defense counsel objected to the use of the word "back," it would have prejudiced Petitioner because it would have called the jury's attention to the word (Id.).

This court agrees with the State's arguments. Although the prosecutor's comment that Petitioner yelled that he was "not going back to jail" may have been improper in light of the trial court's ruling on the State's motion in limine, Petitioner has failed to demonstrate that his counsel committed prejudicial error under *Strickland* for not objecting to the comment. Improper prosecutorial remarks amount to a constitutional violation only if the remarks render the proceedings fundamentally unfair. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The relevant inquiry is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 642). In making this assessment, a reviewing court

must evaluate the allegedly improper comments in the context of both the prosecutor's entire closing argument and the trial as a whole.[1]  *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).

Taken in the context of the entire trial, the prosecutor's comment was not so egregious as to render the trial fundamentally unfair.  *See Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), *cert. denied*, 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."). The prosecutor made the comment only once, whereas multiple times he said that Petitioner had yelled he was "not going to jail," without using the word "back" (Respondent's Ex. 1C - November 8, 2006 trial transcript at p. 9).  *See Land v. Allen*, 573 F.3d 1211, 1220 (11th Cir. 2009) (one among other factors considered "[i]n determining whether arguments are sufficiently egregious to result in the denial of due process" is "whether the remarks were isolated, ambiguous, or unintentional") (citing *Romine v. Head*, 253 F.3d 1349, 1369-70 (11th Cir. 2001)). Moreover, the witnesses testified that Petitioner yelled that he "was not going to jail."  (Id. at pp. 16, 31-32).  Furthermore, the evidence against Petitioner was strong.[2]  "[W]here the evidence of guilt is overwhelming, an improper comment by a prosecutor usually does not render the trial fundamentally unfair in violation of the Constitution."  *Spencer v. Sec'y*, 609 F.3d 1170, 1182 (11th Cir. 2010) (citing *Land*, 573 F.3d at 1220).

In sum, the prosecutor's comment was not of such magnitude as to invalidate the entire trial.

---

[1]Federal law on closing argument is the same as Florida law.  To determine whether a prosecutor's remarks are harmful, "the comments must be analyzed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record."  *Rivera v. State*, 840 So.2d 284, 287 (Fla. 5th DCA 2003) (citing *Brooks v. State*, 762 So.2d 879 (Fla. 2000); *Cochran v. State*, 711 So.2d 1159 (Fla. 4th DCA 1998)).

[2] Defense counsel did not argue that the incident did not happen.  Rather, he argued that the evidence demonstrated that Petitioner was guilty of only a lesser offense (Id. at pp. 84-90).

Petitioner therefore demonstrates no prejudice from any claimed deficient performance. Consequently, Petitioner's claim of ineffective assistance of counsel fails the prejudice prong of the *Strickland* test.

Petitioner has not met his burden of proving that the state courts' resolution of this claim was an unreasonable application of *Strickland*. Accordingly, Petitioner's claim does not warrant relief.

**B. Prosecutor's "Golden Rule" violation**

Petitioner contends that defense counsel was ineffective in failing to object to the prosecutor's use of a "Golden Rule" argument. "'A 'golden rule' argument asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative.'" *Grossman v. McDonough*, 466 F.3d 1325, 1348 (11th Cir. 2006) (quoting *Hutchinson v. State*, 882 So. 2d 943, 954 (Fla. 2004)).[3] Petitioner complains because during closing argument the prosecutor told the jurors to "imagine how scared the officers were" when Petitioner moved toward them while yelling and screaming and holding a baseball bat over his head.

Respondent contends that Petitioner procedurally defaulted this claim because he did not assert it until he filed his second Rule 3.850 motion. The Court agrees.

"Rule 3.850 imposes a procedural bar to successive motions for such relief when the issue could have been raised in a previous motion[.]" *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990) (citing Rule 3.850, Fla.R.Crim.P). Petitioner did not raise his "Golden Rule" claim in his

---

[3] A "golden rule" type argument "is universally condemned because it encourages the jury to 'depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007) (citation omitted).

initial Rule 3.850 motion (Respondent's Ex. 2A).  Rather, he raised it in his second Rule 3.850

motion (Respondent's Ex. 3A).  In response to the second motion, the State argued that the motion

should be dismissed as successive because the claims asserted therein involved information that was

available to Petitioner at the time he filed his first Rule 3.850 motion (Respondent's Ex. 3C).  The

State went on to argue that "the only way in which additional grounds may be brought is if the

suggested errors are found to be fundamental error."  (Id. at p. 2).  The State then addressed each of

the three claims individually, arguing that they should be summarily denied as successive because

they did not constitute fundamental error (Id. at pp. 3-18).  The State did not address the merits of

Petitioner's claim that counsel was ineffective in failing to object to the prosecutor's "Golden Rule"

argument (Id. at pp. 3-6).[4]  In its order denying the second Rule 3.850 motion, the post conviction

court "adopted and incorporated" the "State's arguments, citations, and documents attached to its

Response. . . ."  (Respondent's Ex. 3D at p. 2).

Because the state post conviction court adopted the State's arguments, the court applied

Florida's procedural rule foreclosing Petitioner from raising the "Golden Rule" claim in a successive

Rule 3.850 motion.   The state appellate court affirmed the order on appeal without written opinion

(Respondent's Ex. 3F).[5]

The State's procedural bar rests on adequate state grounds independent of the federal

---

[4]The State, in the alternative, did address the merits of Petitioner's second and third claims, arguing that defense counsel did not render deficient performance (Id. at pp. 7-18).

[5]The per curiam affirmance, although silent on this issue, is presumed to rest on the same ground as the last reasoned decision addressing the question, in this case the procedural bar, an adequate and independent state ground. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

question.[6]  Petitioner is now barred by state procedural rules from returning to state court to present this claim, because another Rule 3.850 motion would be subject to dismissal as untimely and successive. See Fla. R. Crim. P. 3.850(b), (h).  Petitioner's claim is therefore procedurally defaulted. Consequently, absent an exception to the procedural default, the claim is barred from review by this Court.

Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the claim is not addressed on the merits.  Consequently, he is not entitled to federal review of his claim.

Finally, even if the claim was not procedurally barred, it would fail on the merits.  In order to successfully argue a claim of ineffective assistance of counsel, Petitioner must prove that counsel's performance was deficient and that the deficiency caused Petitioner to suffer prejudice. *Strickland*, 466 U.S. 668.  Even assuming that the prosecutor's statement to the jury to "[i]magine how scared the officers were when it was for real. . ." was improper, and that counsel was deficient in failing to object to the statement, Petitioner has failed to show prejudice.

To prove prejudice, Petitioner must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's failure to object to the prosecutor's "Golden Rule" comment.  *Strickland*, 466 U.S. at 694.  In light of the overwhelming evidence demonstrating that Petitioner approached the deputies while wielding an aluminum baseball bat over his head and shouting that he was going to kill the deputies and not going to jail, and that the deputies were in fear for their safety as a result of Petitioner's actions, Petitioner has not shown a

---

[6]Florida's procedural bar on successive Rule 3.850 motions is firmly established and regularly followed by the Florida courts. *See, e.g., Frazier v. State*, 898 So.2d 1183, 1183-84 (Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous post conviction motion).

reasonable probability that the result of the trial would have been different had counsel objected to the comment. *See, e.g., Spencer*, 609 F.3d at 1182; *United States v. Johnson*, 968 F.2d 768, 772 (8th Cir. 1992) ("If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict.") (citation omitted).

Accordingly, Petitioner's "Golden Rule" claim does not warrant relief because it is procedurally barred and would fail on the merits.

**Grounds Two and Three**

In Ground Two, Petitioner contends that during the third trial, counsel was ineffective in failing to impeach  Deputies Mark Walsh, Kurt Karakash, and Thomas Tompkins' testimony that Petitioner took a step toward them immediately before Walsh and Karakash shot Petitioner with their tasers, with their prior inconsistent testimony (during the first and second trials) that Petitioner was retreating when the deputies deployed their tasers.  In Ground Three, Petitioner contends that counsel was ineffective in failing to seek a competency evaluation of Petitioner after he attempted suicide immediately prior to the start of the third trial.  Petitioner argues that he was prejudiced by counsel's failure to seek a competency evaluation because "there is a substantial likelihood that he proceeded to trial despite being incompetent."  (Dkt. 4 at p. 32).

Respondent argues that Grounds Two and Three: 1) are procedurally barred because Petitioner raised them in state court in his second Rule 3.850 motion, and did not show justification for his failure to raise them in his first Rule 3.850 motion; and 2) lack merit (Dkt. 8 at pp. 23-36). Petitioner disputes that the claims are procedurally barred and without merit (Dkt. 10 at pp. 12-22).

**A. Grounds Two and Three are Procedurally Barred**

The court agrees with Respondent that Grounds Two and Three are procedurally barred.  In

14

denying relief on these grounds, the state post conviction court incorporated the State's response to Petitioner's second Rule 3.850 motion (see Respondent's Ex. 3D), which expressly and repeatedly asserted the procedural bar under Rule 3.850 (see Respondent's Ex. 3C).[7]   The state post conviction court therefore expressly relied upon an independent and adequate state procedural bar to reject these claims.   Because the state appellate court affirmed per curiam without written opinion, the decision is presumed to rest on the procedural bar.   *See Harmon v. Barton*, 894 F.2d at 1270 (where state trial court finds procedural default, state appellate court's silent affirmance is a finding of procedural default by the last state court to rule on the question).   Although the State's response alternatively addressed the merits of Grounds Two and Three (see Respondent's Ex. 3C), the procedural bar still applies.   *See Waldrip v. Humphrey*, 532 Fed. Appx. 878, 883 (11th Cir. Aug. 21, 2013) (unpublished) ('"[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.'") (quoting *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994)).   Consequently, Grounds Two and Three are procedurally defaulted.

Petitioner fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S. at 451. Nor does he allege or demonstrate that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, Grounds Two and Three are procedurally barred from federal

---

[7]With regard to Ground Two, the State argued that it "should be summarily denied because it is successive," and "Defendant's motion should be summarily denied as successive. Defendant must show fundamental error to avoid the prohibition against filing a second motion. He has not shown any error at all." (Respondent's Ex. 3C at pp. 7-13). With respect to Ground Three, the State argued that "Defendant's claim of ineffectiveness based on failure [sic] allege incompetence is barred as successive to his first motion for post conviction relief. In support, the State relies on the law set forth previously in this brief. Defendant makes no claim of fundamental error to support the filing of a successive motion." (Id. at p. 14).

15

review.

**B. Grounds Two and Three Fail on the Merits**

Alternatively, even if not procedurally barred, Grounds Two and Three warrant no relief.

**1. Ground Two**

Petitioner contends that during the first and second trials, the deputies testified that Petitioner was "retreating" when they deployed their tasers on Petitioner (Dkt. 10 at docket p. 19).  Petitioner argues that during the third trial counsel was deficient in failing to use that prior testimony to impeach the deputies' testimony that Petitioner took a step toward them immediately before Deputies Walsh and Karakash deployed their tasers (Id.).  Petitioner contends that counsel's failure to impeach the deputies with their prior testimony prejudiced him because it "effectively deprived the jury of the ability to adequately assess witness credibility," "completely altered the defense strategy that [Petitioner] was an irrational person attempting suicide by cop[,]" and "painted [Petitioner] as an individual who desired to harm police officers, not himself."  (Id. at docket pp. 20, 21).

Petitioner's claim fails for three reasons.  First, the deputies' testimony during the first and second trials was not truly inconsistent with their testimony during the third trial.  With respect to Deputy Walsh, when defense counsel asked him during the second trial whether Petitioner was "walking back toward his momma's front porch when he was shot with the taser. . ." he responded "She [the prosecutor] asked me specifically if he had turned and walked back toward the house and I said no.  Now when we did approach we were, like I said, we were about 10 feet away from him, he took maybe two or three steps back, you know, but, I don't recall him turning and going back towards the house." (Dkt. 1-2 at docket p. 34).

With regard to Deputy Karakash, during the first trial he testified that as the deputies

approached Petitioner, Petitioner "stepped back and stopped the motion towards us. . . ."
(Respondent's Ex. 1C - November 8, 2005 trial transcript at p. 30). Shortly thereafter, however,
when asked "[d]id [Petitioner] continue to swing the bat around where you felt intimidated?" Deputy
Karakash answered "[o]n the third time I asked him to put the bat down he took a step forward and
he was tazed" and "[w]hen I saw that foot come forward that was aggression [sic] movement, so he
was tazed." (Id. at p. 33). During the second trial, when defense counsel asked Deputy Karakash
whether Petitioner "actually was retreating at the time that y'all shot him with the stun gun?" he
answered "[h]e was walking backwards towards the house, not turning around and walking towards
the house." (Respondent's Ex. 1C - December 12, 2005 trial transcript at p. 86).

    With regard to Deputy Tompkins, he testified during the second trial that when the three
deputies and Petitioner approached each other "I believe [Petitioner] started to hesitate backwards,
and that's when they deployed their tasers." (Id. at p. 27). During cross-examination, when asked
whether he had told the jury that Petitioner was "retreating, walking backward towards his house
when he was shot by the other two officers with a stun gun. . ." Deputy Tompkins answered "I don't
recall him turning around and walking towards the home. I remember him taking a step backwards.
He was still facing us." (Id. at p. 37).

    Deputy Karakash's testimony during the first trial that he deployed his taser immediately
after Petitioner "took a step forward" is wholly consistent with his testimony during the third trial
that he "deployed [his] Taser" when Petitioner "took one step forward. . . ." (Respondent's Ex. 1C -
November 8, 2006 trial transcript at p. 86).[8] Moreover, during both the second and third trial, the

---

[8]During the first trial, Deputy Tompkins did not testify, and a mistrial was declared prior to Deputy Walsh testifying as to what occurred the moment before the deputies deployed their tasers (Respondent's Ex. 1C - November 8, 2005 trial transcript).

deputies testified that when they approached Petitioner, he stopped advancing toward them and took steps backward away from them.  Although during the second trial the deputies did not testify that Petitioner took one step toward them immediately before Deputies Karakash and Walsh deployed their tasers, they did not testify to the contrary, i.e., they did not testify that Petitioner did not take a step toward them immediately before he was shot with the tasers.  Nor were they specifically asked during the second trial whether Petitioner took a step toward them immediately before deploying their tasers.

In Florida, a prior statement of a witness is admissible to impeach credibility only if it is truly inconsistent with the trial testimony, or if there is a material difference between the two.  *See Morton v. State*, 689 So. 2d 259, 264 (Fla. 1997), *receded from on other grounds by Rodriguez v. State*, 753 So. 2d 29 (Fla. 2000) (a party may attack the credibility of a witness by introducing statements of the witness which are inconsistent with the witness's present testimony, the statement, however, "should be truly inconsistent, and caution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating.").  Simply because during the third trial the deputies included the extra detail that Petitioner took one step toward them immediately before deploying their tasers does not mean that the testimony was inconsistent with or materially different to their prior testimony. Impeachment of the deputies with their prior testimony, therefore, would likely have been inappropriate because the testimony was not truly inconsistent.

Second, even if there was an inconsistency, defense counsel nonetheless effectively cross-examined the deputies by pointing out that Petitioner was walking back toward the house, away from the deputies, because the tasers struck Petitioner's back (Respondent's Ex. 1C - November 8, 2006

trial transcript at pp. 26, 57).  Moreover, during the defense's case, defense counsel was able to induce Deputy Walsh to admit that the photographs of Petitioner showed injuries to Petitioner's back, and that he was lying close to the house after he was shot with the tasers (Id. at pp. 64-65).  As a result, defense counsel was able to argue during closing statements that Petitioner was moving away from the deputies when he was shot in the back (Id. at p. 87).

Whether in Petitioner's case counsel would have been more effective had he impeached the deputies with their alleged inconsistent statements requires an inappropriate use of hindsight to assess the effectiveness of counsel.  *See Delap v. Dugger*, 890 F.2d 285, 298 (11th Cir. 1989).  The decision to cross-examine a witness and the manner in which the cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)).  Further, counsel is strongly presumed to make decisions in the exercise of professional judgment. *See Strickland*, 466 U.S. at 690.

Petitioner has not overcome the strong presumption that counsel's performance was reasonable and adequate. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  He therefore has failed to show that counsel's performance was constitutionally deficient in failing to impeach the deputies with their prior testimony.

Third and finally, even if counsel's performance was deficient, Petitioner cannot demonstrate prejudice.  Petitioner argues that he was prejudiced because during the third trial (which resulted in a conviction) the deputies' testimony that Petitioner took a step toward or "lunged at" them immediately before they deployed their tasers showed "aggression" on the part of Petitioner, whereas during the first two trials (which resulted in mistrials) the deputies "offered different versions of the

events, which lacked any physical aggressiveness on behalf of [Petitioner]." (Dkt. 10 at pp. 20-22).[9]

The record refutes Petitioner's contention that during the first two trials the deputies' testimony did not show that Petitioner had displayed signs of aggression.  For example, during the first trial Deputy Karakash testified that Petitioner "came toward" the deputies while "yelling. . .[y]ou fuckers are going to have to kill me; I ain't going to jail" and holding "a baseball bat. . .over his head. . .in a threatening motion. . . ."  (Respondent's Ex. 1C - November 8, 2005 trial transcript at pp. 29-30).  Deputy Karakash also testified that Petitioner failed to comply with multiple orders to put down the bat, and that he deployed his taser on Petitioner immediately after Petitioner took a step toward the deputies while still holding the bat (Id. at pp. 30, 33).  During the second trial, Deputy Tompkins testified that Petitioner approached the deputies with "the bat over his head while. . .screaming very loudly" and failed to comply with the deputies' orders to put down the bat (Respondent's Ex. 1C - December 14, 2005 trial transcript at pp. 21, 25).  Deputies Walsh and Karakash testified that Petitioner approached the deputies while waiving a baseball bat over his head and yelling "something to the effect of I will kill you fuckers, I ain't going to jail" or "come and get me, I ain't going to jail," and refused multiple orders to put down the bat (Id. at pp. 46-49; 76-80).

Moreover, Petitioner cannot show prejudice as a result of the deputies' testimony that Petitioner stepped toward them immediately before he was shot with the tasers because the crimes were complete prior to that moment.  As in the second trial, the deputies testified during the third

---

[9]The first trial did not result in a mistrial on the basis that the jury was unable to reach a verdict.  Rather, the court declared a mistrial after Deputy Walsh testified that Petitioner had yelled that he "was not going *back* to jail," which violated the court's ruling that the State's witnesses were to refrain from using the word "back."  The trial court did, however, declare a mistrial during the second trial because the jury was unable to reach a verdict (Respondent's Ex. 1C - December 14, 2005 trial transcript at pp. 142-43).  Petitioner's premise that the jury deadlock was caused by the absence of testimony that Petitioner took a step toward the deputies immediately before he was shot by the tasers is, however, purely speculative.

trial that Petitioner approached the deputies while waiving a baseball bat over his head and yelling

that they were going to have to kill him because he was not going to jail, and that Petitioner refused

multiple orders to put down the bat (Respondent's Ex. 1C - November 8, 2006 trial transcript at pp.

16-22, 31-35, 52-53).   The deputies further testified that Petitioner appeared to have the ability to

carry out the threat, and that Petitioner's actions put them in fear for their safety (Id. at 22-24; 36;

53-54).   This testimony established that Petitioner committed aggravated assault on a law

enforcement officer with a deadly weapon and resisting an officer with violence, regardless of

whether or not Petitioner took a step toward the deputies immediately before they deployed their

tasers.[10]  Even if Petitioner was moving away from rather than toward the deputies at the moment

he was shot with the tasers, that does not show that Petitioner did not commit the offenses for which

---

[10]The trial court instructed the jury, in pertinent part, as follows:

. . .to prove the crime of aggravated assault on a law enforcement officer, the State must prove the following seven elements beyond a reasonable doubt. . . First, Harold Elrod intentionally and unlawfully threatened, either by word or act, to do violence to Mark Walsh [and Kurt Karakash]; second, at the time, Harold Elrod appeared to have the ability to carry out the threat; third, the act of Harold Elrod created in the mind of Mark Walsh [and Kurt Karakash] a well-founded fear that the violence was about to take place; fourth, the assault was made with a deadly weapon; fifth, Mark Walsh [and Kurt Karakash] was at the time a law enforcement officer; six, Harold Elrod knew Mark Walsh [and Kurt Karakash] was a law enforcement officer; seven, at the time of the assault, Mark Walsh [and Kurt Karakash] was engaged in the lawful performance of his duties.

***

. . .to prove the crime of resisting an officer with violence, the State must prove the following three elements beyond a reasonable doubt: First, Harold Elrod knowingly and willingly resisted, obstructed, or imposed Thomas Tompkins, Kurt Karakash, or Mark Walsh by offering to do or doing violence to Thomas Tompkins, Kurt Karakash, or Mark Walsh; second, at the time Thomas Tompkins, Kurt Karakash, or Mark Walsh was engaged in the lawful execution of a legal duty; third, at the time Thomas Tompkins, Kurt Karakash, or Mark Walsh were officers - - each was an officer.

(Respondent's Ex. 1C - November 8, 2006 trial transcript at pp. 96-98).

he was convicted.[11]

Since Petitioner has shown neither deficient performance nor consequent prejudice, he has

not met his burden under *Strickland*.  Accordingly, Ground Two does not warrant habeas corpus

relief.

### 2. Ground Three

Prior to Petitioner's first trial on November 8, 2005, Petitioner was evaluated by a

psychiatrist, Dr. Thomas McClane, in March 2005 (see Respondent's Ex. 3C - April 12, 2005

Psychiatric Evaluation report).   Dr. McClane concluded, in pertinent part, that Petitioner was

"COMPETENT TO PROCEED" to trial (Id. at p. 4 of report) (emphasis in original).

In March 2006, apparently the day before jury selection in his third trial, Petitioner overdosed

on Valium and drove his vehicle into a lake (Dkt. 10 at p. 24; Respondent's Ex. 1C - transcript of

November 8, 2006 trial, pp. 45-47).[12]  Petitioner contends that in light of this suicide attempt and his

history of psychiatric problems, counsel was ineffective in failing to have him re-evaluated for

competency to stand trial.   He further contends that he was prejudiced by counsel's failure to have

---

[11]It appears Petitioner argues that the testimony that Petitioner took a step toward the deputies immediately before he was shot with the tasers was prejudicial because it "painted [him] as an individual who desired to harm police officers, not himself[,]" and "completely altered the defense strategy that [Petitioner] was an irrational person attempting suicide by cop." (Dkt. 10 at docket pp. 20-21).  The State was not required to prove that Petitioner desired or intended to harm the deputies.  Rather, the State was required to prove that Petitioner intentionally did an act that was substantially certain to put the deputies in fear of imminent violence. *See Pinkney v. State*, 74 So. 3d 572, 576 (Fla. 2d DCA 2011) ("Section 784.011(1) [the statute criminalizing assault] requires proof of an intentional threat that creates a fear of imminent violence. Thus, to satisfy the intent element the State must prove that the defendant did an act that was substantially certain to put the victim in fear of imminent violence, not that the defendant had the intent to do violence to the victim.").  Moreover, Petitioner taking a step toward the deputies is consistent with the defense theory that Petitioner was attempting "suicide by cop" because an aggressive movement toward the deputies was likely to cause them to shoot Petitioner.

[12]The Polk County Clerk's Docket report indicates, in pertinent part, that jury selection in Petitioner's third trial was scheduled for March 20, 2006.  Petitioner's motion for continuance, however, was granted on that day, apparently because Petitioner was "in [the] hospital."  (Respondent's Ex. 1E at record p. 21).

him re-evaluated because "there is a substantial likelihood that he proceeded to trial, despite being incompetent." (Dkt. 10 at p. 25).

Even assuming deficient performance, Petitioner fails to show resulting prejudice. "In order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)). The federal standard for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him. *See Godinez v. Moran*, 509 U.S. 389, 396-97 (1993) (citing *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam); *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). The Florida standard for competency to stand trial is the same. See Fla. Stat, Section 916.12(1) ("A defendant is incompetent to proceed within the meaning of this chapter if the defendant does not have sufficient present ability to consult with her or his lawyer with a reasonable degree of rational understanding or if the defendant has no rational, as well as factual, understanding of the proceedings against her or him.").

Petitioner does not allege, much less demonstrate, that any mental infirmity rendered him unable to understand the proceedings or consult with counsel. He does not specifically allege that he was actually incompetent to proceed, only that "there is a substantial likelihood that he" was incompetent, and that "any reasonable person would question [his] competency" after his suicide attempt (Dkt. 10 at p. 25). No presumption exists, however, that a suicide attempt is sufficient to raise a question regarding a defendant's competency to stand trial. *See Drope*, 420 U.S. at 180 (a

suicide attempt need not always signal incompetency to stand trial); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("'Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'") (quoting *Card v. Singletary*, 981 F.2d 481, 487 (11th Cir. 1992); *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir.1984)). Petitioner cannot satisfy *Strickland*'s prejudice prong with mere speculation or conclusory allegations. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

In sum, Dr. McClane's 2005 evaluation report indicated that Petitioner was competent to proceed to trial. Petitioner has not presented evidence establishing that an additional psychological evaluation would have revealed that Petitioner was incompetent to proceed to trial in November 2006. Accordingly, Petitioner cannot demonstrate prejudice from counsel's failure to have Petitioner re-evaluated for competency.

Petitioner's failure to establish prejudice precludes relief on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691-92. Accordingly, Ground Three does not warrant relief.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on ___July 22ⁿᵈ_____, 2014.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Counsel of Record

25